```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ORTHO-CLINICAL DIAGNOSTICS BERMUDA CO.
LTD., and ORTHO-CLINICAL DIAGNOSTICS,
INC.,
```

        Plaintiffs,

       - against -

FCM, LLC, and MITCHELL HABIB,

        Defendants.

**MEMORANDUM AND ORDER**

15 Civ. 5607 (NRB)

```
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Ortho-Clinical Diagnostics Bermuda Co. Ltd. and Ortho-Clinical Diagnostics, Inc. (together, "Ortho"), sued defendants FCM, LLC and Mitchell Habib for breach of contract, fraudulent inducement, fraud, negligent misrepresentation, tortious interference with prospective economic advantage, unjust enrichment, and breach of the covenant of good faith and fair dealing. Defendants moved to dismiss the amended complaint in its entirety. For the following reasons, defendants' motion to dismiss is granted.

## I.  BACKGROUND

The underlying facts in this case are set forth in Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC ("Ortho I"), No. 15

Civ. 5607 (NRB), 2016 WL 4939370 (S.D.N.Y. Sept. 12, 2016), with which the Court assumes familiarity.

The complaint in this case was filed in July 2015. After the defendants filed a pre-motion letter in anticipation of a motion to dismiss, we asked that the parties first engage in a round of briefing regarding the effect of their March 30, 2015 settlement agreement (the "Settlement Agreement") on plaintiffs' claims. Oral argument was held on July 20, 2016.

On September 12, 2016, we issued a Memorandum and Order addressing the ramifications of the Settlement Agreement. Id. We held that Ortho could not pursue claims arising out of the following facts, as they were "actually known" when the parties entered into the Settlement Agreement: (1) that FCM failed to perform work it promised and refused to perform work it allegedly promised; (2) that defendants misrepresented their expertise and ability; and (3) that FCM refused to allow Ortho access to FCM's subcontractors. Id. at *5. By contrast, we held that plaintiffs could proceed with claims that were not "actually known" at the time of the Settlement Agreement, i.e., (i) defendants' alleged failure to prepare an end-to-end plan; (ii) defendants' alleged interference with plaintiffs' relationship with J&J; and (iii) defendants' alleged misrepresentation of the number of transitioned applications. Id. at *7. We noted that these facts "form the basis, at least

2

in part, of Ortho's fraudulent misrepresentation, fraudulent inducement, negligent misrepresentation, and unjust enrichment claims." Id. at *6.

Finally, we permitted plaintiffs to file an amended complaint, which they did on September 26, 2016, ECF No. 37. The amended complaint alleges the following causes of action: (1) breach of the Settlement Agreement; (2) fraudulent inducement of the Settlement Agreement; (3) fraud; (4) negligent misrepresentation; (5) tortious interference with prospective economic advantage; (6) unjust enrichment; (7) breach of the Engagement Agreement, which is also sometimes called the Consulting Agreement (asserted only to preserve the claim for appeal, see Am. Compl. ¶ 100 n.3; Synnott Decl. Ex. C, ECF No. 41; and (8) breach of the covenant of good faith and fair dealing as to the Engagement Agreement.

The defendants filed a motion to dismiss the amended complaint. The briefing included a sur-reply and sur-sur-reply filed with the Court's permission. Oral argument on the motion was held on June 1, 2017.

## II.  DISCUSSION

### A.  Legal Standard

In evaluating a motion to dismiss for failure to state a claim, the Court will accept all allegations in the complaint as

true and draw all reasonable inferences in favor of the
plaintiff.  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229,
237 (2d Cir. 2007).  However, a plaintiff must plead "enough
facts to state a claim to relief that is plausible on its face."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

We will address each cause of action in turn.

**B.   Breach of Contract of Settlement Agreement**

Plaintiffs' first claim is that defendants breached the
Settlement Agreement by not providing an end-to-end plan.  As
the Settlement Agreement contains no requirement to do so, this
claim cannot succeed.

The relevant part of the Settlement Agreement is called the
"Transition Assistance" provision and reads as follows:

> FCM will provide [Ortho] and the Successor Providers
> with all reasonably required assistance necessary to
> facilitate the transition of responsibility for such
> services and activities from FCM to the Successor
> Providers ("Transition Services").  Such Transition
> Services will *include providing information, data,
> software code, documentation,* and access to relevant
> FCM personnel and answering questions about the
> services.

Am. Compl. Ex. B ¶ 3 (emphasis added).  Plaintiffs claim that
this provision required defendants to "provide Transition
Assistance in the form of comprehensive and accurate
infrastructure plans and detailed sub-plans."  Am. Compl. ¶ 73;
see also id. ¶ 77.  Indeed, plaintiffs allege, such planning is
"standard practice in the industry, and it should have been

finalized several months earlier . . . ." Id. ¶ 62; see also
Pls.' Sur-Reply at 2-3, ECF No. 50 ("Ortho reasonably expected
to get from FCM what any IT transition services provider *should
have had* after 11 months on the job, including and especially IT
infrastructure plans." (emphasis added)).    Plaintiffs further
argue that "throughout the parties' course of dealing, FCM had
deliberately created the impression that it had created *valuable*
'information, data, software code, [and] documentation' during
its nearly 12 months leading the project.    FCM promised to
provide *this* material to the new contractors in the Settlement
Agreement . . . ."  Pls.' Opp'n at 9, ECF No. 43 (emphases added
and internal citation omitted).

As a matter of law, however, the contract does not require
the defendants to have created documentation in the form of an
end-to-end plan, or indeed "valuable," "comprehensive,"
"accurate," or "reasonable" documentation.    Plaintiffs' counsel
conceded at oral argument that the Settlement Agreement did not
describe the specific documentation to be provided or its
quality.  See July 20, 2016 Oral Argument Tr. 14:11-16 ("THE
COURT: Point me to exactly what you think you can rely on.  They
say that we'll help you out.  But there's no representation as
to what the state of completion on the project is by FCM in that
paragraph, is there?  [PLAINTIFFS' COUNSEL]: There's certainly
no written representation in this.").  "In construing a contract

we look to its language, for a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Quadrant Structured Prods. Co. v. Vertin, 23 N.Y.3d 549, 559-60, 16 N.E.3d 1165 (2014) (internal quotation marks and citation omitted). Given the absence of a promise in the Settlement Agreement regarding what exact materials the defendants would provide or its quality, defendants did not breach in the way that plaintiffs allege.

To bridge this gap, plaintiffs subsequently argued in their sur-reply that there must have been no meeting of the minds regarding the Settlement Agreement, as evidenced by its "'ambiguous and contradictory terms, of which the parties have contradictory but reasonable interpretations'" on this issue. Pls.' Sur-Reply at 4 (quoting Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC, 760 F. Supp. 2d 384, 388 (S.D.N.Y. 2011)). The plaintiffs' theory is unavailing. "Even where there is ambiguity, if parties to a contract omit terms . . . the inescapable conclusion is that the parties intended the omission." Quadrant, 23 N.Y.3d at 560. And even if there were ambiguity in the Settlement Agreement, any ambiguity would be construed against the drafters -- i.e., the plaintiffs. See Dickinson Decl. (ECF No. 51); Schlesinger Decl. (ECF No. 52); Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 460, 539

N.E.2d 570 (1989) ("If the [agreement] was ambiguous because it did not state [a term] explicitly, then its terms must be strictly construed against the drafter . . . .").

Therefore, the plaintiffs' claim of breach of the Settlement Agreement is dismissed.

## C.  Fraudulent  Inducement  of  the  Settlement  Agreement (Misrepresentation and Omission)

Plaintiffs next allege, "Defendants Habib and FCM made numerous intentional misrepresentations and material misrepresentations of fact regarding the progress they had achieved under the FCM Consulting Agreement over the entire course of their engagement.  During the detailed negotiations that occurred prior to the Settlement Agreement, FCM and Habib deliberately omitted that these representations had been false all along.  This was done in order to induce Ortho to agree to the Settlement Agreement and release claims under the FCM Consulting Agreement."  Am. Compl. ¶ 81.  We address the misrepresentation and omission claims in turn.

### 1.  Fraudulent Inducement Through Misrepresentation

Plaintiffs' misrepresentation claim is based on the following paragraphs of the amended complaint, see Pls.' Opp'n at 14:

> Ortho also learned that the transitioning of approximately 400 non-ERP applications was nowhere near the level of completion FCM and Habib had represented.  All along, FCM has [sic] represented that significant percentages of these applications had

been transitioned, but Ortho soon learned after gaining access to the subcontractors that FCM was inflating these percentages by claiming to have transitioned non-ERP applications for which no work was required (e.g., applications that required nothing more than setting up a license on a computer). FCM had actually only transitioned 12% of the non-ERP applications that required transitioning.

Am. Compl. ¶¶ 70-71.

The pleading of misrepresentation claims is governed by Federal Rule of Civil Procedure 9(b), which requires "plaintiffs to allege (1) the specific statement or omission; (2) the aspect of the statement or omission that makes it false or misleading; (3) when the statement was made; (4) where the statement was made; and (5) which defendant was responsible for the statement or omission." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (internal quotation marks and citations omitted), aff'd, 2 F. App'x 109 (2d Cir. 2001).

Paragraphs 70 and 71 of the amended complaint fail to meet the requirements of Rule 9(b), as they do not allege who made the statement; when or where the statement was made; or even the specific statement. At the July 20, 2016 oral argument, the Court cautioned plaintiffs about the deficiencies in these exact paragraphs and provided plaintiffs with an opportunity to amend the complaint. See July 20, 2016 Oral Argument Tr. 23:17-24:13;[1]

---

[1] Paragraphs 60 and 61 in the original complaint were renumbered paragraphs 70 and 71 in the amended complaint.

Ortho I, 2016 WL 4939370, at *7.  Nonetheless, plaintiffs chose not to add any information to these paragraphs.  See Synnott Decl. Ex. D.

Therefore, plaintiffs' misrepresentation claim is dismissed for failure to meet the requirements of Rule 9(b).

**2.   Fraudulent Inducement Through Omission**

Plaintiffs' omission claim is based on the following paragraph of the amended complaint, see Pls.' Opp'n at 13-14:

> FCM and Habib, however, were aware that FCM had not prepared the detailed end-to-end infrastructure planning necessary to guide the subcontractors.  And FCM and Habib failed to disclose these fundamental shortcomings to mislead Ortho and cause it to enter into a Settlement Agreement on terms favorable to FCM and Habib, even though FCM knew it had little to provide Ortho.

Am. Compl. ¶ 54.

Fraudulent omission claims are also governed by Rule 9(b). "In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff[;] and (4) what defendant obtained through the fraud."  Odyssey, 85 F. Supp. 2d at 293. Paragraph 54 meets these Rule 9(b) requirements.

Accordingly, we proceed to evaluating whether plaintiffs have pled a fraudulent omission claim, the elements of which

are: (1) a material omission; (2) intent to defraud; (3) reasonable reliance on the part of the plaintiffs; and (4) damage resulting from the reliance. Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007), aff'd, 354 F. App'x 496 (2d Cir. 2009). Here, we need only address the element of reasonable reliance. We conclude that because plaintiffs did not reasonably rely on the defendants, their fraudulent omission claim fails.

"The question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997). Indeed, "reasonable reliance is often a question of fact for the jury rather than a question of law for the court . . . ." STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 81 (2d Cir. 2011).

Even so, fraud claims can fail as a matter of law for failure to plausibly allege reasonable reliance. E.g., Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195-96 (2d Cir. 2003). In particular, "[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 737 (2d Cir. 1984); see Crigger v.

Fahnestock & Co., 443 F.3d 230, 235 (2d Cir. 2006).  Put another way, reliance is not reasonable where "a sophisticated party performs no independent investigation whatsoever, even when the context or background information available should arouse suspicion.  As Judge Friendly noted, 'decisions holding that reliance on misrepresentations was not justified are generally cases in which plaintiff was placed on guard or practically faced with the facts.'" JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 407 (S.D.N.Y. 2004) (quoting Mallis v. Bankers Trust Co., 615 F.2d 68, 81 (2d Cir. 1980), abrogated in part on other grounds by Peltz v. SHB Commodities, 115 F.3d 1082, 1090 (2d Cir. 1997)) (internal alteration incorporated).  In such situations -- where there exist "circumstances surrounding the parties' relationship (e.g. litigation) that would normally arouse suspicion" -- a duty arises on the part of the plaintiff to inquire further.  Winnick, 350 F. Supp. 2d at 408.

Here, plaintiffs have pled that circumstances existed which in fact aroused their suspicion.  First, in the context of the Settlement Agreement negotiations, "Ortho knew that it could not trust FCM and Habib because, among other things, FCM had prevented Ortho from accessing the FCM subcontractors so that Ortho could determine the extent of the harm caused by FCM at the time of settlement."  Am. Compl. ¶ 56.  Even before the Settlement Agreement was negotiated, Ortho was so displeased

with FCM that Ortho hired the consultancy firm KPMG to take over
responsibility for transitioning finance-related applications,
id. ¶ 48, and forced FCM to fire its third-party technical
partner Tata Consultancy Services, id. ¶ 42. In addition,
"[t]he complaint clearly alleges that [Ortho] entered into the
Settlement Agreement . . . *because* FCM failed to perform work it
promised and refused to perform work it allegedly promised. . .
. Similarly, Ortho alleges that, at the time the parties
executed the Settlement Agreement, Ortho no longer had any faith
in defendants' expertise or ability, as plaintiffs specifically
negotiated the Release with defendants' alleged failings in
mind." Ortho I, 2016 WL 4939370, at *5. As plaintiffs' counsel
acknowledged, "I do not disagree with the Court that we had
concerns. We openly pled them. We're not trying to hide them
from anyone." June 1, 2017 Oral Argument Tr. 7:25-8:2. Given
these circumstances, a duty to inquire on the part of plaintiffs
attached.

However, plaintiffs did not discharge their duty to
inquire. True, plaintiffs allege that, first, they asked for
and were denied access to the subcontractors, and second, they
crafted a Settlement Agreement designed to cause defendants to
reveal any problems. But these indirect actions failed to make

use of the protective means available to the plaintiffs.[2]   Most basically, plaintiffs did not ask defendants whether the plans existed.   See Pinney v. Beckwith, 202 A.D.2d 767, 768, 608 N.Y.S.2d 738 (3d Dep't 1994) ("a simple inquiry" is "the barest of precautions").   Plaintiffs also could have asked to see the defendants' work product which, plaintiffs agree, was the plaintiffs' property.   July 20, 2016 Oral Argument Tr. 22:11-23:7; June 1, 2017 Oral Argument Tr. 7:16-8:16; see Waksman v. Cohen, No. 00 Civ. 9005 (WK), 2002 WL 31466417, at *6 (S.D.N.Y. Nov. 4, 2002) (reasonable reliance is "absent where a party failed to review available records or secure available documentation which would have otherwise armed it with the truth").   What is more, even if plaintiffs lacked access to the subcontractors, plaintiffs do not contest that they had access to the other group on the project -- the Johnson & Johnson employees -- and could have asked questions of them.   June 1, 2017 Oral Argument Tr. 7:17-18; see Am. Compl. ¶¶ 17, 20. Finally, plaintiffs could have obtained relevant representations and warranties in the Settlement Agreement.   See DDJ Mgmt., LLC v. Rhone Grp. L.L.C., 15 N.Y.3d 147, 156, 931 N.E.2d 87 (2010).

Plaintiffs here were sophisticated entities "represented by an attorney over the course of [the] settlement negotiations . .

---

[2]   Additionally, the fact that plaintiffs were denied access to the subcontractors is one of the red flags that generated the duty to inquire, so plaintiffs cannot use the subcontractor request to show that they have fulfilled their duty.

.  .   Having engaged in arm's length negotiations with the Defendants after a history of contentious litigation which called into question the veracity of Defendants' conduct and having failed to use the means available to [them] to discover accurate information about what [they] contend[] were material facts, [plaintiffs] cannot now demonstrate the reasonable or justifiable reliance necessary to sustain a claim for fraudulent concealment." <u>Waksman</u>, 2002 WL 31466417, at *8.  Therefore, the fraudulent omission claim is dismissed.

**D.  Fraud**

Plaintiffs allege under this cause of action that defendants "overstat[ed] their expertise and abilities, claim[ed] progress that they never achieved, and refus[ed] to disclose remarkable failures in planning and oversight. . . . FCM and Habib made these misrepresentations and material omissions knowing of their falsity, in order to cause Ortho to enter into the FCM Consulting Agreement and extend tens of millions of dollars in payments to Defendants, and, later, to secure millions in additional fees through the Settlement Agreement." Am. Compl. ¶¶ 86-87.

The cause of action must be dismissed.  To the extent the alleged fraud is related to the defendants' overstatements of their expertise and abilities, we held in <u>Ortho I</u> that those claims were released by the Settlement Agreement.   2016 WL

4939370, at *5.  As to the claims of progress never achieved and refusal to disclose failures in planning and oversight, these fraud claims are duplicative of the fraudulent inducement claims in Count II of the Amended Complaint and would fail under the same analyses; indeed, the parties did not brief the fraud claims separately from the fraudulent inducement claims.

## E.   Negligent Misrepresentation

According to plaintiffs, "The misrepresentations, misstatements, and false claims FCM and Habib made regarding their ability to perform under the FCM Consulting Agreement and their progress as of the Settlement Agreement were incorrect." Am. Compl. ¶ 92.

The claim has been released to the extent it relates to the Engagement Agreement.  Ortho I, 2016 WL 4939370, at *5.

As for the rest of the claim, it is dismissed for failure to plead with the specificity required under Rule 9(b).  See supra Section II.C.1; Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 583 (2d Cir. 2005) (negligent misrepresentation claims are governed by Rule 9(b)).[3]

## F.   Tortious Interference with Prospective Economic Advantage

In both their opposition brief and their sur-reply brief, plaintiffs make no response to the defendants' arguments in

---

[3] Although plaintiffs' opposition brief makes a stray reference to a negligent omission claim, Pls.' Opp'n at 19, such a claim is absent from the Amended Complaint, see Am. Compl. ¶¶ 90-93.

support of dismissing this claim.  Therefore, the plaintiffs are deemed to have abandoned the claim.  <u>Jackson v. Fed. Exp.</u>, 766 F.3d 189, 197-98 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

**G.  Unjust Enrichment**

"[W]here there is an express contract that clearly controls, the unjust enrichment claim should be dismissed." <u>Bloom v. Rock</u>, No. 06 Civ. 6301 (NRB), 2010 WL 2267468, at *8 (S.D.N.Y. May 27, 2010) (internal quotation marks omitted).

Here, the Engagement Agreement and Settlement Agreement clearly control.  In fact, plaintiffs rely on these contracts in their attempt to plead unjust enrichment.  <u>See</u> Am. Compl. ¶ 98 ("Defendants Habib and FCM have been unjustly enriched by the FCM Consulting Agreement and Settlement Agreement in which they received a benefit of tens of millions of dollars at the expense of Ortho in return for providing almost no work, beyond providing access to subcontractors.").  A party dissatisfied with the results of a contract cannot use an unjust enrichment claim to reform it:  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim. . . . To the extent that these claims succeed, the unjust enrichment claim is

duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." <u>Corsello v. Verizon N.Y., Inc.</u>, 18 N.Y.3d 777, 791, 967 N.E.2d 1177 (2012). Therefore, the unjust enrichment claim is dismissed.

**H.   Breach of the Covenant of Good Faith and Fair Dealing in the Engagement Agreement**

"New York law implies a covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Thyroff v. Nationwide Mut. Ins. Co.</u>, 460 F.3d 400, 407 (2d Cir. 2006) (internal quotation marks omitted). To state a cause of action, "the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." <u>Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce</u>, 265 A.D.2d 513, 514, 697 N.Y.S.2d 128 (2d Dep't 1999). "[T]he implied covenant can only be invoked to include terms that the parties must have intended because they are necessary to give business efficacy." <u>Luxus Aviation, LLC v. Kerwin Media LLC</u>, 91 A.D.3d 569, 571, 938 N.Y.S.2d 11 (1st Dep't 2012) (internal quotation marks omitted and alterations incorporated).

Plaintiffs allege that three implied promises existed in the Engagement Agreement: "for FCM to preserve the relationship with J&J, reasonably apply the true scope of the matter, and

permit Ortho reasonable access to the subcontractors . . . ."
Am. Compl. ¶ 109.  We already held that plaintiffs released
claims related to the last two promises.  Ortho I, 2016 WL
4939370, at *5, *7.  The remaining claim relates to the implied
promise "to preserve the relationship with J&J."

Plaintiffs fail to show how maintenance of the relationship
with J&J was necessary to give "business efficacy" to the
Engagement Agreement, even if it otherwise may have been good
practice.  Indeed, had the defendants successfully completed
their duties under the Engagement Agreement, the plaintiffs'
relationship with J&J would have been at an end.  It was only
once the plaintiffs' relationship with the defendants broke down
that the plaintiffs' relationship with J&J gained importance.
See Am. Compl. ¶¶ 42-43.  Accordingly, plaintiffs have failed to
plead how, in failing to preserve the relationship with J&J,
defendants prevented performance of the Engagement Agreement or
withheld the Engagement Agreement's benefits.  Therefore, the
claim for breach of the covenant of good faith and fair dealing
is dismissed.


### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is
granted.  This Memorandum and Order resolves the motion pending

at docket entry 39.   The Clerk of the Court is directed to terminate this case.

**SO ORDERED.**


Dated:   New York, New York
         July 6, 2017


NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

19